**HAMPTON INTERNATIONAL COMMUNICATIONS, INC., Plaintiff,**

v.

**LAS VEGAS CONVENTION AND VISITORS AUTHORITY, Defendant.**

No. CV–S–93–1110–HDM(RJJ).

United States District Court, D. Nevada.

Jan. 17, 1996.

Neil Beller, Las Vegas, NV, for plaintiff.

Kuke Puschnig, Dickerson, Dickerson, Liberman & Consul, Las Vegas, NV, Paul E. Larsen, Lionel Sawyer & Collins, Las Vegas, NV, for defendant.

### ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

McKIBBEN, District Judge.

The court has considered the report and recommendation of the United States Magistrate Judge (# 136) filed on December 22, 1995, wherein the magistrate judge recommends that the court enter its order granting defendant's motion for summary judgment (# 115) in that the restriction on plaintiff's commercial speech does not violate the First Amendment and no genuine issue of material fact remain. No objections to the report and recommendation have been filed and the clerk of the court has been advised that objections will not be filed. The court has considered the pleadings and memoranda of the parties and other relevant matters of record and has made a review and determination in accordance with the requirements of 28 U.S.C. § 636 and applicable case law, and good cause appearing, the court hereby

ADOPTS AND ACCEPTS the report and recommendation of the United States Magistrate Judge. It is, therefore, ORDERED that defendant's motion for summary judgment (# 115) is granted and judgment shall be entered in favor of the Las Vegas Convention and Visitors Authority and against Hampton International Communications, Inc. The trial set for January 25, 1996 is vacated.

### REPORT & RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

[December 22, 1995]

JOHNSTON, United States Magistrate Judge.

This matter was submitted to the undersigned Magistrate Judge on Defendant Las Vegas Convention and Visitors Authority's Motion for Summary Judgment (# 115). The Court has reviewed the Motion for Summary Judgment (# 115), the Plaintiff's Opposition to the Defendant's Motion for Summary Judgment (# 116), and the Las Vegas Convention and Visitors Authority's Reply to Plaintiff's Opposition to Motion for Summary Judgment (# 118) and corresponding Supplements (# 121, # 129, # 130).

### BACKGROUND

On or about October 18, 1993, the Las Vegas Convention and Visitors Authority ("LVCVA") leased the Las Vegas Convention Center to Interface Group–Nevada, Inc. ("Interface") for its annual "COMDEX" tradeshow. COMDEX promoters acquired a leasehold interest in the entire Convention Center facility, including the building, front entry, walkways leading to the Convention Center, and all parking lots in front of the facility. On or about November 8, 1993, the LVCVA leased the Las Vegas Convention Center to Electronic Industries Association ("CES") for its annual Consumer Electronics tradeshow. CES acquired a leasehold interest in essentially the identical areas of the Las Vegas Convention Center as the COMDEX promoters.

During these tradeshows, Plaintiff Hampton International Communications ("Hampton"), a for profit business which publishes various newspapers and commercial tabloids relevant to the computer industry, attempted to distribute its "show dailies" on the walkways leading to the Convention Center.

Tradeshow promoters prohibited Hampton's conduct since the distribution of commercial materials or "official dailies" [1] on Convention Center property was limited to designated areas and to only those organizations which had given consideration for the exclusive right to distribute commercial materials on the Las Vegas Convention Center grounds. Convention Center grounds include the ingress and egress walkways leading to the building where Plaintiff attempted to distribute its materials. No provision prohibits any person from distributing material on the municipal sidewalks which surround the Convention Center grounds.

On November 10, 1993, Hampton alleged a deprivation of its First Amendment right and sought a temporary restraining order and permanent injunction allowing it to distribute its commercial publication on Convention Center ingress and egress walkway areas during the COMDEX tradeshow. See, Compl. (# 1), Case No. CV–S–1110–LDG–(RLH). The injunctive request was denied. Less than two months later, on January 3, 1994, Hampton filed another Complaint for Injunctive Relief against LVCVA seeking to distribute its dailies at the CES tradeshow. Case No. CV–S–94–008–LDG–(RLH). Prior to the latter legal action, Hampton had contracted with CES to sublease a booth at the CES show in order to distribute its own materials on the Convention Center grounds. Tradeshow regulations, however, precluded Hampton both from distributing advertisements anywhere outside of its booth and from displaying or distributing its "dailies" on the Convention Center premises without the express permission of CES. Because

Hampton believed such regulations were unduly restrictive, it filed the injunctive relief request before the CES tradeshow began. When the temporary restraining order was again denied, Hampton demanded a jury trial on the issue of damages. The district court subsequently consolidated the second case with the first. Order (# 22).

On November 24, 1993, Hampton filed its First Amended Complaint (# 14) alleging, *inter alia*, that (1) a prior Judgment by Consent entered into by LVCVA on June 30, 1993, permits a lessee to exclude only "protest or demonstration activities" from Civic Center premises and not other expressive activity, (2) Hampton was entitled to injunctive and declaratory relief in that Defendant's restriction on the distribution of expressive material at the Las Vegas Convention Center violated its First and Fourteenth Amendment rights, and (3) Hampton incurred damages from Defendant's actions.

After nearly two years of pre-litigation maneuvering by the two private parties in this case, Hampton and Interface Group–Nevada, Inc. settled their dispute.[2] Pursuant to the Pretrial Order (# 124) and the Motion for Summary Judgment (# 115), the court must now determine whether any genuine issue of material fact exists requiring submission of the case against LVCVA to a jury.

## DISCUSSION

### I. STANDARD FOR MOTION FOR SUMMARY JUDGMENT

"Summary judgment may be granted when, viewing the evidence in the light most favorable to the non-moving party, no genu-

---

1. A convention "daily" is a profit-oriented publication which lists tradeshow events along with various paid commercial advertisements, articles, and editorials. Publishers of "official dailies" generally acquire such recognition, including the right to distribute its materials on convention premises, in exchange for a promotional fee.

2. The controversy between Hampton and Interface became quite involved; however those matters were only peripheral to the pertinent First Amendment issues of this case. Specifically, on December 15, 1993, Interface filed its Answer and Counterclaim (# 19) against Hampton. In the counterclaim, Interface alleged, *inter alia*,

that Hampton had used, without Interface's authority, the "COMDEX" service mark in soliciting advertisers for Hampton's show dailies, and on the front cover of its show dailies during the 1993 Fall COMDEX trade show. Consequently, Interface sought injunctive relief and damages for service mark infringement, unfair trade practices, and deceptive trade practices. Twice the Defendant disregarded Motions to Compel Discovery and twice the court imposed sanctions against it. See Orders (# 68) and (# 80). Then on June 28, 1995, a Stipulation and Order (# 117) was filed wherein the Complaint and Counterclaims between Hampton and Interface were dismissed.

ine issues of fact remain and the movant is entitled to judgment as a matter of law." *Cleary v. News Corporation,* 30 F.3d 1255, 1259 (9th Cir.1994), citing Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). A court must grant a summary judgment motion against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Evidence is sufficient to establish an essential element of a party's case if that evidence "is such that a reasonable jury could return a verdict" for that party. *Hopkins v. Dow Corning Corporation,* 33 F.3d 1116, 1121 (9th Cir.1994), citing *Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510. However, "the mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10. Any showing of fact made by a party will be examined through the prism of the substantive evidentiary standards that apply to the particular case. *Id.* at 254–55, 106 S.Ct. at 2513–14.

## II.  MOOTNESS

■ A federal court may have jurisdiction to decide a dispute provided that a case or controversy exists as set forth in U.S. Constitution, art. III, § 2. Because Plaintiff has stipulated to a settlement with Interface, its case is moot as to the alleged interference by Interface which prevented Hampton from distributing its materials at the Convention Center. The LVCVA is the only remaining defendant against which Hampton seeks redress. Hampton maintains a damages claim pursuant to 42 U.S.C. § 1983 for the deprivation by a state agent of rights constitutionally guaranteed by the First and Fourteenth Amendments. But for this alleged state action to deprive a constitutional right, Plain-

tiff's continuing request that this court determine whether the disputed walkways located on the Las Vegas Convention Center are public fora would constitute merely an advisory opinion and lie beyond the jurisdiction of a federal court.[3] Plaintiff's case is justiciable by a federal court, therefore, only if their civil rights damages claim legitimately involves unconstitutional state action against private conduct.

## III.  STATE ACTION

■ The First Amendment guarantee of free speech guards against undue governmental encroachment and erects no shield against merely private conduct. *Shelley v. Kraemer,* 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948). Hence, Section 1983 of 42 U.S.C. permits liability actions wherein a party is injured by a person, *who under color of state law,* deprives the party of any right, privilege, or immunity secured by the Constitution. That is, persons violating this statute must be engaged in activity deemed to be acts of the state and not just acts of private persons or entities. *Rendell–Baker v. Kohn,* 457 U.S. 830, 837, 102 S.Ct. 2764, 2769, 73 L.Ed.2d 418 (1982). Additionally, municipal corporations are "persons" subject to Section 1983 actions. *Monell v. Dep't Social Services of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

■ In determining whether state action exists in this context, the ultimate issue is whether the alleged infringement of federal rights is "fairly attributable to the State." *Rendell–Baker,* 457 U.S. at 838, 102 S.Ct. at 2769, citing *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982). The Supreme Court has adopted a two-part approach to this question of "fair attribution." First, the claimed constitutional deprivation must result from the exercise of a right or privilege having its source in state authority. Second, the party charged with the deprivation must be a person who fairly may be said to be a state

---

3. Had Plaintiff not sought damages, Plaintiff likely could have still had his case heard and avoid mootness concerns since the case appears to be one "capable of repetition, yet evading review," where the challenged action is in its duration too

short to be fully litigated prior to its cessation and a reasonable expectation exists that the Plaintiff would be subject to the same action again. *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975).

actor. *Lugar*, 457 U.S. at 937, 102 S.Ct. at 2754. In this case, where the authority of a private entity to act stems from a direct agreement with the state, the central inquiry focuses on the second factor of whether a party can be described "in all fairness" as a state actor.[4] *Id.; see also, Edmonson v. Leesville Concrete Co. Inc.*, 500 U.S. 614, 619, 111 S.Ct. 2077, 2082, 114 L.Ed.2d 660 (1991).

Determining what may be fairly considered governmental action is generally a factbound inquiry. However, Supreme Court precedents serve as guideposts in the analysis.[5] To be sure, the Supreme Court rarely finds undertakings to be within the narrow category of functions exercised traditionally and exclusively by the government. *See generally, Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). The Court has stated that "while many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State.'" *Flagg*, 436 U.S. at 158, 98 S.Ct. at 1734. At the same time, however, where a private party and its conduct are closely associated with the state, it may be fair to treat the private action as state conduct. *See, NCAA v. Tarkanian*, 488 U.S. 179, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988).

The state action issue is pertinent to the instant case since no facts allege that LVCVA actually prohibited Hampton from distributing information. Rather, tradeshow promoters as lessees of the Convention Center implemented what was a perceived right to unconditionally prohibit unauthorized handbilling on leased Convention Center premises acquired under the leasehold agreement with the LVCVA. Neither party addressed this issue in its original brief.[6] Only in its Supplement (#121) did Defendant raise the state action issue by noting a recent Fourth Circuit case which held that the private organizer of a municipal festival on city grounds did not constitute state action since the organization, management, and promotion of a community entertainment event is not a function traditionally and exclusively exercised by the government. *See, United Auto Workers v. Gaston Festivals, Inc.*, 43 F.3d 902 (4th Cir.1995).

The LVCVA argues that, similar to the actions by the plaintiff in *Gaston*, organizing a tradeshow event and exercising effective managerial control over a convention center do not fall within the domain of functions exercised traditionally and exclusively by the government.[7] However, the court finds that this case is more analogous to the state activity and reasoning undergirding the decision in *Evans v. Newton*, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966) and similar cases in which a sufficiently close nexus ex-

---

4. The constitutional deprivation alleged by Plaintiff in this case is a direct result of Interface and CES exercising their leasehold agreement for exclusive use of the Las Vegas Convention Center as set forth and granted in the lease entered into by Interface and CES with the LVCVA.

5. Several principles apply in a state action analysis: (1) a state normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State. *Blum v. Yaretsky*, 457 U.S. 991, 1003, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982); *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) (the state compulsion test); (2) where a private group is serving a public function, federal courts must examine whether that function performed has been "traditionally the exclusive prerogative of the State." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 353, 95 S.Ct. 449, 455, 42 L.Ed.2d 477 (1974)

(the public function test); and (3) a sufficiently close nexus between the state and the challenged action of the private party should exist so as to fairly treat the private conduct as state action. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 353, 95 S.Ct. 449, 455, 42 L.Ed.2d 477 (1974); *see also, Stypmann v. City of San Francisco*, 557 F.2d 1338, 1342 (9th Cir.1977); *NCAA v. Tarkanian*, 488 U.S. 179, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988) (the nexus or joint action test).

6. Both parties were directed by the Court to brief the state action issue subsequent to the hearing on Defendant's Motion for Summary Judgment. See Order (#128).

7. Defendant also contends that the actual exclusion of Plaintiff's information from Convention Center premises cannot be fairly attributed to the State since it acted only as a lessor or "owner out of occupancy" and did not actually restrict speech through any means. Second Supplement (#130).

ists between the state and the challenged action so as to fairly treat the private conduct as state action. *See, Jackson,* 419 U.S. at 351, 95 S.Ct. at 454; *NCAA v. Tarkanian,* 488 U.S. 179, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988).

In *Newton,* the management activity carried on by private trustees over a municipal park was determined to be state action, not merely because the park traditionally served the public, but rather due to the state's entwined role in the management and control of the premises in question. Likewise, in the case at hand, a government entity retains ownership, maintenance, and daily control over the Convention Center.[8] In fact, the LVCVA's role as the traditional municipal authority over the premises is firmly established not only by corporeal conduct and control, but also by the Las Vegas Convention Center lease agreement to which tradeshow promoters must adhere.

The lease agreement in this case is a distinguishing factor from those cases in which state action was not found because the State acted only as a lessor of its own property without enforcing restrictive policies or otherwise interfering with lessee activities.[9] According to the lease here, the lessee "shall not ... distribute or circulate or permit to be circulated or distributed, any advertising matter or program in or about the Las Vegas Convention Center public area." See Lease, attached to (# 33) as Exhibit 1, Paragraph 24. Although the Defendant did not actually prohibit the Plaintiff from handbilling on Convention Center premises, it was by the LVCVA's express authority as set forth in its lease and as proprietor of the Convention Center that tradeshow promoters acted. Interface and CES enforced the "no unauthorized handbilling" policy as required by the lease and with the authority granted by that lease. It is this close nexus between compelled government policy and the putative

unconstitutional interference with speech that evidences state action. The policy of the LVCVA was so interdependent and indistinguishable from that of tradeshow promoters that it was, in effect, a joint participant with the tradeshow organizers in the effectuation of that policy. *See, Jackson,* 419 U.S. at 357–58, 95 S.Ct. at 457–58.

Because of this "symbiotic relationship" whereby the government advanced its policy through the acts of tradeshow promoters throughout its lease, and due to the fact that the government has remained so inexorably involved with the daily oversight and administration of the Las Vegas Convention Center, the tradeshow promoters' actions under their respective lease agreements with the LVCVA can in all fairness be described as state action. Consequently, any action taken by a private lessee of the Las Vegas Convention Center which comports to the LVCVA's lease agreement and which improperly deprives another of a constitutionally protected right constitutes state action for purposes of Section 1983 liability.

## IV. FORUM DOCTRINE

The constitutional standards which proscribe the amount of governmental restriction that can be placed on speech are well established. As a general rule, the First Amendment prohibits governmental restrictions on expression due to the ideas, subject matter, or content of that message. *See, e.g., Police Department of Chicago v. Mosley,* 408 U.S. 92, 95, 92 S.Ct. 2286, 2289, 33 L.Ed.2d 212 (1972). Government may impose upon speech and the conduct associated with speech, reasonable time, place, and manner restrictions which are content-neutral. The particular standard by which federal courts determine the reasonableness of a governmental restriction is determined by the forum wherein the speech occurs. "At one end of the spectrum are streets and parks which

---

8. The LVCVA is a governmental agency founded by Clark County pursuant to N.R.S. 244A.597. Therefore, the Court considers this municipal entity an agent and actor for the government, and for purposes of a First Amendment analysis, its actions constitute state actions.

9. Only where the State grants absolute autonomy to its lessees will its ownership of a facility be insufficient to constitute state action. *See, United Auto Workers v. Gaston Festivals, Inc.,* 43 F.3d 902 (4th Cir.1995); *Gannett Satellite Info. Network Inc. v. Berger,* 894 F.2d 61 (3rd Cir.1990); *NBC v. Communications Workers of America,* 860 F.2d 1022 (11th Cir.1988).

'have immemorially been held in trust for the use of the public and ... have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *Perry Ed. Ass'n v. Perry Local Ed. Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983) (quoting *Hague v. C.I.O.,* 307 U.S. 496, 515, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939)). Governmental restrictions upon these locales must be content neutral, narrowly tailored to serve a compelling state interest, and leave open alternative channels of communication. *Id.*

Continuing down the spectrum from the traditional public forum is the designated public forum, opened by the state for limited or unlimited use by the public as a place for expressive activity. "The Constitution forbids a State to enforce certain exclusions from a forum generally open to the public even if it was not required to create the forum in the first place," and as long as the State retains the open character of the facility, it is bound by the same standards that apply to a traditional public forum. *Perry Ed. Ass'n,* 460 U.S. at 45–46, 103 S.Ct. at 955–56.

Finally, the non-public forum consists of public property which is not by tradition or designation a forum for public communication. *Id.* at 46, 103 S.Ct. at 955. This forum is governed by a different standard from the previous two. Upon this forum, similar to other private property owners, the State may reserve the forum to its intended purposes and impose regulations that are viewpoint neutral and reasonably related to a legitimate state interest. *Id.*

The distinctions between a designated public forum and a non-public forum are at times fine and difficult to determine. Turning to the case at hand, the ingress-egress walkways in dispute appear to more closely resemble those public areas immemorially held in trust for the use of the public and for purposes of assembly and communicating thought. The walkway areas are open to the public at large and seem, in all other physical regards, like a traditional public forum. On the other hand, some aspects of the Las Vegas Convention Center, which was built for the primary purpose of attracting large conventions and increasing the economic activity of Las Vegas and Clark County, are non-public in nature. The Court notes that the government does not create a public forum "whenever members of the public are permitted freely to visit a place owned or operated by the Government." *Greer v. Spock,* 424 U.S. 828, 836, 96 S.Ct. 1211, 1216, 47 L.Ed.2d 505 (1976). Moreover, sidewalks which merely lead to the entry of a public, government-owned facility are not necessarily a traditional public forum. *Jacobsen v. U.S. Postal Service,* 993 F.2d 649 (9th Cir. 1992, Amended April 30, 1993). As a general free speech principle, physical appearance alone does not dictate the outcome of a forum analysis; rather it is the combination of that appearance with considerations of the property's fundamental purpose that controls. *See, United States v. Kokinda,* 497 U.S. 720, 727, 110 S.Ct. 3115, 3120, 111 L.Ed.2d 571 (1990).

The ingress and egress walkways at issue here have the appearance and clear purpose to assist Convention Center patrons in traveling between the privately-leased Convention Center and public areas. They do not constitute a public thoroughfare. They were created solely to manage the heavy pedestrian traffic which generally accompanies large, privately-organized events for which the Convention Center was built. Accordingly, the ingress and egress walkways associated with the Las Vegas Convention Center are not the traditional public forum sidewalk referred to in *Perry Education Assoc. v. Perry Local Educators' Ass'n,* 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). The Court recognizes that the entrance to a Convention Center may be more conducive to distributing speech than, for example, a post office or federal building. However, Plaintiff has not proffered sufficient facts to show that the walkway areas here are a public forum.[10]

10. Plaintiff mentions in its brief only five specific "disputed material facts" accompanied by an argument that its speech is not purely commercial and is entitled to protection since its hand-billing is not "incompatible" with the walkways in question. *See,* Opposition to Motion for Summary Judgment (# 116). The facts proffered by Plaintiff are generally either non-disputed or

Moreover, as will be shown, even if the area in dispute had been a limited-public or public forum, the speech restriction here was a valid regulation of commercial speech to protect a substantial government interest.

## V. COMMERCIAL SPEECH

■ Although the First Amendment guarantees freedom from government restrictions on all speech, there exists a sensible distinction between speech proposing a commercial transaction, which often arises in areas traditionally subject to government regulation, and other varieties of speech. *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 455–56, 98 S.Ct. 1912, 1918–19, 56 L.Ed.2d 444 (1978). Accordingly, even though commercial speech is usually afforded First Amendment protection equal to that of other forms of speech due to the "consumer's interest in the free flow of commercial information," certain types of restriction may be tolerated. *Rubin v. Coors Brewing Co.,* — U.S. ——, ——, 115 S.Ct. 1585, 1589, 131 L.Ed.2d 532, 538 (1995) (quoting *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 765, 96 S.Ct. 1817, 1827, 48 L.Ed.2d 346 (1976)).

■ In commercial speech cases, government regulation may be permitted depending on the outcome of the applicable four-part analysis: (1) the speech must concern lawful activity and not be misleading, (2) the asserted governmental interest must be substantial, (3) the regulation must directly advance the governmental interest asserted, and (4) the regulation must not be more extensive than is necessary to serve the interest. *Central Hudson Gas & Electric Corp. v. Public Serv. Comm'n of N.Y.,* 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980). State restrictions of commercial speech that

do not comport with this test are unconstitutional.

■ The foregoing analysis is applicable to government restrictions on speech which does nothing more than propose a commercial transaction. *Virginia State Board of Pharmacy,* 425 U.S. at 762, 96 S.Ct. at 1826. Speech which contains advertisements, refers to a specific product, or which is distributed with an economic motivation evidences its commercial nature. *See, Bolger v. Youngs Drug Products Corp.,* 463 U.S. 60, 66–67, 103 S.Ct. 2875, 2880–81, 77 L.Ed.2d 469 (1983). Importantly, communication can constitute commercial speech "notwithstanding the fact that [it] contain[s] discussions of important public issues." *Bolger,* 463 U.S. at 67, 103 S.Ct. at 2880 (quoting *Central Hudson Gas,* 447 U.S. at 563, 100 S.Ct. at 2350). Thus "advertising which 'links a product to a current public debate' is not thereby entitled to the constitutional protection afforded noncommercial speech." *Id.*

■ In the case at hand, Plaintiff Hampton produced and sought to distribute on the grounds of the Las Vegas Convention Center a "show daily" containing mostly advertisements and editorials for products of advertisers.[11] Hampton's desire to distribute its publication at computer tradeshows is motivated exclusively and undoubtedly by economic factors. It was the prospect of commercial gain that motivated the concept, creation, development, and production of the material. Indeed, it is financial interests that undergird this very litigation. Hampton's arguments that its "show daily" was noncommercial speech is without merit.

### A. *Central Hudson Gas* Analysis

■ The commercial speech analysis of the Plaintiff's materials is more definitively

non-material: The first two "disputed facts" deal with the exact composition of Plaintiff's show dailies and are irrelevant to this analysis. The third is a correct statement inasmuch as it states that the LVCVA requires permission to distribute materials from *leased* areas. Statement four alleges that Plaintiff's show dailies are given free and that another distributor once handbilled promotional materials from the walkways here. These facts are not disputed nor relevant. Finally, statement five asserts that Convention Center

sidewalks are indistinguishable from public sidewalks. This conclusion is unsupported and encompassed in the court's legal analysis.

11. The daily is approximately 75 percent advertisements. Two–Thirds of the remaining 25 percent comprises editorial material supporting products or services or personnel of advertisers in the publication. Pretrial Order (# 124) at 3.

demonstrates, regardless of the forum, that LVCVA's conduct comported with First Amendment guarantees of free speech. Because neither party contends that Plaintiff's speech is misleading, the first test of the *Central Hudson Gas* analysis need not be addressed. Thus Plaintiff's speech may be restricted, despite the forum in which it is disseminated, provided the LVCVA's interest is substantial and the regulation it imposes directly advances the government's interest in a way that is not overly restrictive.

### 1. Substantial Government Interest

The LVCVA has a substantial government interest in restricting commercial speech because the Las Vegas Convention Center is a commercial venture by Clark County and the City of Las Vegas for improving economic activity in southern Nevada. This convention-leasing enterprise generates economic development throughout southern Nevada. Accordingly, the government's desire to maintain this economic activity is a substantial one. *See, Lehman v. City Shaker Heights,* 418 U.S. 298, 303, 94 S.Ct. 2714, 2717, 41 L.Ed.2d 770 (1974) (a state agency engaged in a permitted commercial activity has a substantial interest entitled to deference).

Additionally, the government has a substantial public policy interest. The ingress-egress walkways were designed to facilitate the unencumbered entry and exit of visitors to the Las Vegas convention facility. The unregulated activity of innumerable commercial venturers vying for favorable locales from which to distribute their sundry commercial materials would unduly congest the walkways and not only interfere with the ability of tradeshow promoters to control its crowds, but also with the ability of attendees to freely enter and exit the very event they traveled to attend. The LVCVA has an substantial interest in avoiding this adverse situation.

### 2. Regulation Must Directly Advance that Interest

The government "has power to preserve the property under its control for the use to which it is lawfully dedicated." *Greer,*

424 U.S. at 836, 96 S.Ct. at 1216 (1976). Hampton seeks to publish commercial materials that would compete with the financial interests of the lessees the LVCVA desires to serve. Permitting competing commercial entities to distribute materials without acquiring consent from leasing tradeshow promoters would undermine the LVCVA's fundamental purpose to lure, facilitate, and ultimately, lease space to large business conventions and commercial events in the Las Vegas Convention Center. A convention center lessees' ability to control and sell the exclusive rights to access convention patrons is the quintessence of the tradeshow enterprise. The integrity of that ability attracts future tradeshow promoters, conventions, visitors, and indirectly generates significant economic activity within the area served by the LVCVA. By regulating the distribution of competing commercial materials, the LVCVA preserves the competitiveness of the Las Vegas Convention Center and directly advances its substantial economic interest. Additionally, the prohibition of unauthorized distributors from the ingress-egress walkway areas maintains that areas for its intended purpose of safe and convenient entrance and exit for convention center visitors. *See, Heffron v. Int'l Society for Krishna Consciousness, Inc.,* 452 U.S. 640, 650–51, 101 S.Ct. 2559, 2565–66, 69 L.Ed.2d 298 (1981) (activities incompatible with the normal character and function of the government property may be regulated).

### 3. Regulation No More Extensive than Necessary

When determining whether a regulation on commercial speech is more extensive than necessary, the "least-restrictive means" need not be used. Rather, there must only be a reasonable fit between the state's purpose and the means chosen to achieve the desired end. *Board of Trustees of State University of N.Y. v. Fox,* 492 U.S. 469, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989). LVCVA policy meets this burden. Hampton argues that Defendant's means are not reasonable because a previous June 30, 1993, judgment

by consent specifies the restrictions that Defendant is authorized to place upon speech. However, commercial speech was not at issue in that case. Here, where plaintiff's motivation to distribute materials is financial gain, a different standard applies. Accordingly, by prohibiting the unauthorized distribution of materials on leased convention center premises the LVCVA employs a reasonable means to preserve its substantial economic interest.

## CONCLUSION

Because of the integral role the LVCVA plays in daily management and control of the Las Vegas Convention center and considering the nature of the LVCVA's lease whereby a policy of excluding non-authorized commercial activity is expressly maintained therein, state action exists for purposes of Section 1983 claims. However, the regulations imposed by the LVCVA as lessor of the Las Vegas Convention Center are reasonable since (1) the ingress-egress areas are non-public forums, and (2) the restrictions directly advance a substantial government interest. Specifically, the LVCVA may preserve the marketability of its tradeshow-industry enterprise and the significant economic development that venture generates by prohibiting commercial entities from distributing unauthorized materials on all Convention Center premises.

## RECOMMENDATION

Based on the foregoing, and good cause appearing therefore,

IT IS THE RECOMMENDATION of the undersigned Magistrate Judge that Defendant's Motion for Summary Judgement (# 115) be GRANTED in that the restriction on Plaintiff's commercial speech does not violate the First Amendment and no genuine issue of material fact remain.

---

1. Pursuant to P.L. NO. 103–296, the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security effective March 31, 1995. In accordance with section 106(d) of P.L. 103–296,